0IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARIS ROUSE,               :          CIVIL ACTION
      Plaintiff,       :
                      :
   v.                :      No.:   14-1115
                      :
COMCAST CORPORATION,  :
      Defendant.      :

MEMORANDUM

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE          April 14, 2015

      The parties have reached a settlement in this case brought under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment Collection Law ("WPCL"). The Court previously granted preliminary approval of their agreement. Currently before the Court is Plaintiff's unopposed motion to certify the settlement class, grant an enhancement payment to the class representative, and finally approve the settlement agreement, (ECF No. 50) and Plaintiff's unopposed motion for attorney's fees and costs (ECF No. 51). The Court held a fairness hearing on April 9, 2015. There are no objections to the agreement. For the following reasons, the Court will grant both motions, and will award attorney's fees and costs in the amount of $158,865.

I.      BACKGROUND

      Karis Rouse ("Plaintiff") was employed by Comcast Corporation ("Defendant") as a Business Sales Representative at Defendant's facility in Horsham, Pennsylvania from January 1, 2010 to October 16, 2013. (Am. Compl. ¶¶ 25, 36, ECF No. 21). He filed claims on behalf of himself and other Business Sales Representatives working for Defendant at the Horsham facility,

asserting that Defendant failed to compensate them for pre-and-post shift compensable work largely comprised of initiating phone calls with, and receiving phone calls from, Defendant's customers in order to sell Defendant's business products. (*Id.* ¶¶ 47-48). According to Plaintiff, Defendant instead compensated Business Sales Representatives based on "the predetermined times associated with their scheduled shifts," and specifically instructed that class members could not record, or request compensation for, any work performed before or after their predetermined shift start times. (*Id.* ¶ 44). Additionally, Plaintiff alleges that though Defendant automatically deducted thirty minutes per day for an "unpaid lunch period" during every shift, Business Sales Representatives routinely worked during this period and were not compensated for that time, nor was there a policy or system in place to allow them to request overtime compensation for work performed during unpaid meal breaks. (*Id.* ¶¶ 49-50).

On February 24, 2014, Plaintiff initiated a FLSA collective action for failure to pay overtime for post-shift activities, a PMWA class action for failure to pay overtime, and a WPCL class action for failure to pay employees all wages due.[1] On September 10, 2014, the parties engaged in a full day of private mediation, which proved unsuccessful. (Pl.'s Mem. 19, ECF No. 50-1). On November 10, 2014, however, the parties participated in a Settlement Conference with this Court, at which time they reached a conditional settlement agreement. (*Id.*). To settle all claims, Defendant agreed to pay $453,900 ("the Settlement Amount"), inclusive of all Class

---

[1] Plaintiff separately alleged that he was terminated from his employment on the basis of race, in violation of 42 U.S.C. § 1981. (*See* Count V, Am. Compl.). Upon the subsequent stipulation of the parties, the Court dismissed this claim without prejudice. (ECF No. 43).

Member payments, attorney's fees and costs, and class representative service payments.[2] (Joint Stipulation of Settlement and Release ("Settlement Agreement") ¶ 5, ECF No. 50-1 Ex. 2).

On February 6, 2015, the Court entered an order preliminarily certifying a settlement class and preliminarily approving the Settlement Agreement.[3] (Order, ECF No. 46). The Court preliminarily certified, for purposes of settlement only, the following Settlement Class:

> All Business Sales Representatives employed by Comcast Cable Communications Management, LLC, at its Horsham, Pennsylvania, facility for at least one day between February 25, 2011, and January 28, 2015.

(*Id*. ¶ 4). The Court appointed Plaintiff to serve as Settlement Class Representative, Murphy Law Group, LLC, to serve as Class Counsel, and RG/2 Claims Administration LLC to serve as claims administrator. (*Id*. ¶¶ 5-7). The Court further preliminarily approved the settlement as fair, reasonable and adequate, (*id*. ¶ 2), approved the notice and claim forms to be used, (*id*. ¶ 8), and the notice procedure to be used, (*id*. ¶ 9).

On February 10, 2015, the claims administrator mailed Class Notice and Exclusion/Opt-Out Forms to 420 potential class members. (Declaration of Melissa E. Baldwin in Supp. of Mot.

---

[2] Specifically, $281,589.45 will be distributed to class members, a $2500 enhancement award will be paid to Plaintiff, $6500 will pay the costs of the claims administrator, and Murphy Law Group, LLC will be paid $158,865 in fees, representing 35% of the Settlement Amount, as well as $4445.55 in litigation costs. (Settlement Agreement ¶¶ 10-12). Class payments to the members of the Settlement Class will be calculated based on a number of factors, including the number of weeks, up to a maximum of 104 weeks, the Class Member was employed by Defendant during the relevant time period. (*Id*. ¶ 6). Under the terms of the settlement agreement, class members agree to release all wage and hour claims against Defendant during the class period that are "based upon a Class Member's claim that he or she engaged in off-the-clock pre-shift and post-shift security procedures." (*Id*. ¶ 15).

[3] The Court originally granted preliminary approval of the Settlement Agreement and Settlement Class on January 28, 2015 (Order, ECF No. 44); however, this order was vacated by the Order of February 6, 2015 to reflect a change in the parties' submissions.

for Final Approval of Collective and Class Settlement ("Baldwin Decl.") ¶¶ 4-7, ECF No. 50-2 Ex. 5).  The notice informed each participant of the settlement, the claims being released, and the formula for calculating each individual's settlement payment, and provided instructions for submitting a claim form.  (Class Notice, ECF No. 50-1 Ex. 4).  Class members were informed in the notice that the deadlines for returning executed claim forms in order to request exclusion from or to object to the settlement were March 12, 2015 and March 26, 2015, respectively.  (*Id*).

The claims administrator received only two timely exclusion/opt-out forms.  (Baldwin Decl. ¶ 8).  The claims administrator did not receive any objections to the settlement.  (*Id.* ¶ 10).  The Court held a final fairness hearing on April 9, 2015, at which no objectors appeared.

## II.     FINAL CERTIFICATION OF THE CLASS

### A.     Final Certification under Federal Rule of Civil Procedure 23

#### 1.     Rule 23(a) Requirements

For a lawsuit to be maintained as a class action, four prerequisites must be met: (1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: there are questions of law or fact that are common to the class; (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation: the representative parties will fairly and adequately protect the class.  *See* Fed.R.Civ.P. 23(a).

##### a.     Numerosity

There is no minimum number of individuals necessary for certification of a class, and a prospective class that includes over forty members will generally satisfy the numerosity

requirement.  *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *Eisenberg v. Gagnon*, 766 F.2d 770, 785–86 (3d Cir. 1985).  In this case, there are 418 class members, and the numerosity requirement is clearly satisfied.

### b.    Commonality

The commonality requirement is satisfied if there is at least one question of law or fact common to the class.  *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 527-28 (3d Cir. 2004).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal Mart Stores, Inc. v. Dukes*, —— U.S. ——, ——, 131 S.Ct. 2541, 2551 (2011) (internal quotations and citations omitted).  "Their claims must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.

Here, the proposed Settlement Class is comprised of 418 individuals who all worked in the same position and were subject to the same overtime policies during the relevant period.  All prospective class members allege common issues of law and fact at the core of this case: in sum, that Defendant's payroll practices and policies resulted in the denial of overtime pay for compensable work performed before and after scheduled shifts and during unpaid lunch breaks. (Am. Compl. ¶ 19 (a) - (e)).  They seek similar legal remedies pursuant to the FLSA and under the Pennsylvania wage and hour laws applicable to their claims.  These similar legal and factual issues satisfy the commonality requirement.

### c.    Typicality

The typicality requirement is satisfied if the claims of the representative parties are typical of the claims of the class.  Fed.R.Civ.P. 23(a)(3).  However, class members are not

required to have identical claims or underlying factual circumstances; if the claims at issue arise from the same practice or course of conduct, or are based on the same underlying legal theory, the typicality requirement will be satisfied.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311-12 (3d Cir. 1998).  Though the concepts of commonality and typicality are analytically similar, the typicality requirement is specifically "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals," *id.* at 311, and to avoid situations where the legal theories of the named plaintiffs conflict with the legal theories of the absentees.  *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994).

In the instant matter, Plaintiff's claims are based on the alleged failure of Defendant to compensate him for the time he spent working before and after his compensated shifts and during his unpaid lunch break.  He seeks recompense for this "off-the-clock" time.  The prospective class alleges the same course of conduct and seeks the same type of relief.  The interests of Plaintiff thus clearly align with those of the prospective class members and the typicality requirement is satisfied here.

### d.    Adequacy of Representation

Class members are adequately represented if (1) the interests of the class representative are not in conflict with the interests of the class members, and (2) Class Counsel is experienced, vigorously prosecuted the action, and acted at arm's length from the defendant.  *Warfarin Sodium*, 391 F.3d at 532; *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995).  Here, the Court finds that Class Counsel has experience handling class and collective action disputes, particularly cases arising under the FLSA, and,

most critically, has represented the Plaintiff and the prospective class competently and diligently throughout the course of this litigation.

Further, it is clear that Plaintiff's interests are aligned with other prospective class members. All performed similar job duties when engaging in "off-the-clock" work, all were subject to and impacted by the same payroll and timekeeping policies and practices of Defendant, and all allege the same harm. In addition, Plaintiff is subject to the same calculations for damages under the terms of the Settlement Agreement as the prospective class members. For these reasons, the adequacy requirement is satisfied.

### 2. Rule 23(b)(3) Requirements

If the Court determines that a putative class satisfies the requirements of Rule 23(a), it must also determine whether the class falls into one of the categories enumerated in Rule 23(b). Plaintiff in this action seeks certification under Rule 23(b)(3), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). These two requirements are generally referred to as "predominance" and "superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). When assessing predominance and superiority for settlement purposes only, a showing of manageability of trial is not required. *Prudential*, 148 F.3d at 313-16.

### a.      Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and assesses whether a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 297 (3d Cir. 2011) (citations and internal quotations omitted).  This requirement imposes a more "rigorous obligation" upon the Court than Rule 23(a)'s commonality requirement.  *See id.*  Where plaintiffs allege a common course of conduct on the part of the defendant, the predominance requirement will often be satisfied.  *See id.* at 297-98.

Here, as discussed, Plaintiff has alleged a common course of conduct, specifically, Defendant's requirement, per its time-tracking and overtime payment practices, that employees work "off-the-clock" prior to and after scheduled shifts and during unpaid lunch breaks.  The key issue in this case, as alleged by Plaintiff, is whether Defendant had a policy and/or practice of failing to pay employees for time spent working "off-the-clock."  Accordingly, the Court finds that issues common to the prospective class predominate the individual issues.

### b.      Superiority

To satisfy the superiority test, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Prudential*, 148 F.3d at 316 (citations and internal quotations omitted).  First, the record in this case does not indicate a strong interest among class members in individually controlling the prosecution of a separate action.  As stated, the putative class in this action is comprised of 420 individuals, yet only two persons have timely opted out.  The average claim is

8

approximately $1250.  Thus, the class action mechanism is particularly appropriate, because the relatively small amount of potential individual recovery will not incentivize individuals to bring solo lawsuits.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Second, the Court need not consider the manageability of the litigation, since approval of the proposed settlement would negate any trial.  *Id.* at 620.  In sum, it would be inefficient and costly to maintain hundreds of individual lawsuits, all based on extremely similar underlying facts and virtually identical legal arguments.  The superiority requirement is satisfied.

Having determined that Plaintiffs have satisfied the relevant requirements of Rule 23 to obtain class certification, the Court will certify the class for purposes of settlement.

## B.    Final Certification under the FLSA

The FLSA's collective action provision allows one or more employees to bring an action for overtime compensation "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  For an opt-in class to be created under this provision, the Court must be satisfied that individuals in the class are "similarly situated."  *Zavala v. Wal Mart Stores, Inc*., 691 F.3d 527, 536 (3d Cir. 2012).  To determine whether members of the collective action are similarly situated, the Court must evaluate a number of factors, including but not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment."  *Id*. at 536–37.  "Plaintiffs may also be found dissimilar based on the existence of individualized defenses."  *Id*. at 537.  The Court must "consider[ ] all the relevant factors and make[ ] a factual determination on a case-by-case basis."  *Id*. at 536.

The Court previously determined that the class was similarly situated within the meaning of 29 U.S.C. § 216(b).  (Order ¶ 3, ECF No. 46).  The opt-in Plaintiffs are all Business Sales Representatives employed by Defendant at a specific geographic location — the Horsham, Pennsylvania facility — who performed almost identical job duties.  As discussed above, they all assert the same claims and seek the same form of relief: compensation for "off-the-clock" time spent answering and making phone calls to Defendant's customers.  There have been no objections to the preliminary certification of the FLSA collective action and Defendant has not asserted any defenses during the settlement proceedings or objected to the settlement based on the existence of individual defenses.  The Court therefore finds, consistent with its initial order and for the purposes of settlement only, that the class satisfies the requirements for FLSA collective action certification.

## III.     FINAL APPROVAL OF THE SETTLEMENT

A class action may not be settled under Federal Rule of Civil Procedure 23(e) without a determination by the Court that the proposed settlement is "fair, reasonable and adequate." *Warfarin*, 391 F.3d at 534.  "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).  The law favors settlement of class and collective actions, in order to conserve scarce judicial resources by avoiding formal litigation, and "[t]hese economic gains multiply when settlement also avoids the costs of litigating class status." *Gen. Motors*, 55 F.3d at 784. Nevertheless, the Court must act as the guardian of the rights of absent class members who may be bound "by the operation of res judicata even though [these absent] plaintiffs are not the real

10

parties to the suit." *Id.* Where, as here, settlement negotiations took place before class

certification and the parties seek class certification and settlement simultaneously, the Court

must be "doubly careful in evaluating the fairness of the settlement." *Id.* at 805 (quoting *Ace

Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971)).

The Third Circuit in *Girsh* identified nine factors that guide this Court's evaluation of

whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23; these factors

include:

> (1) the complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks of
> establishing liability; (5) the risks of establishing damages; (6) the
> risks of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156-57 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974)).

## A.    The Settlement is Entitled to an Initial Presumption of Fairness

In this Circuit, a settlement is entitled to an initial presumption of fairness where it

resulted from arm's length negotiations between experienced counsel, there was sufficient

discovery, and there were no objectors and only a small percentage of opt-outs. *Gen Motors*, 55

F.3d at 785; *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d. 631, 640 (E.D. Pa. 2003)

("A presumption of correctness is said to attach to a class settlement reached in arm's length

negotiations between experienced, capable counsel after meaningful discovery."); *In re Rent-

Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("[S]ettlement negotiations took

place at arm's length between highly experience[d] and competent counsel.  Their assessment of the settlement as fair and reasonable is entitled to considerable weight.").

Here, the Court finds that the settlement is entitled to an initial presumption of fairness. The settlement resulted from multiple days of arms-length negotiations between experienced counsel, first in private mediation and then in a settlement conference with this Court.  (Pl.'s Mem. of Law 15).  At the fairness hearing, Class Counsel detailed for the Court the factual investigation he undertook prior to settlement, which included reviewing the pay records of the seventeen opt-in class members and consideration of the individual arbitration policy that would have applied to approximately half of the class.  Lastly, there are no objectors and only two opt-outs.  In light of these considerations, the settlement is entitled to an initial presumption of fairness.

### B.    The Settlement Satisfies the *Girsh* Factors

#### 1.    Complexity, Expense and Duration of Litigation

This first *Girsh* factor is intended to capture "the probable costs, in both time and money, of continued litigation," *Gen. Motors*, 55 F.3d at 812 (internal quotations and citation omitted), and weighs in favor of approving the settlement here.  This class action brought under the FLSA and Pennsylvania wage and hour statutes involves complex factual issues involving "off-the-clock work," and will require additional discovery, including depositions of Defendant's management, documentation, and obtaining representative testimony from employees. Considering the likely long duration of such litigation, a settlement at this stage avoids the significant costs and risks associated with protracted litigation.  Further, the involvement of

numerous state law statutes, in addition to the federal statute here, would enhance the complexity of the litigation process.  For these reasons, this factor weighs in favor of settlement.

### 2.    Reaction of Class to Settlement

The second *Girsh* factor also clearly weighs in favor of settlement.  As stated, not a single class member of class of 420 individuals objected to the settlement and only two timely requested to opt out.   These facts indicate consent on the part of the class to the terms of the settlement.  *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that second *Girsh* factor favored settlement where 29 of 281 class members objected to the terms of the settlement); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at * 12 (D.N.J. Apr. 8, 2011) (noting that the second *Girsh* factor weighed in favor of settlement where there were no objectors to settlement and less than one percent opted out).  Accordingly, the reaction of the class strongly supports the approval of the settlement here.

### 3.    State of the Proceedings and Amount of Discovery Completed

In evaluating the third *Girsh* factor, the Court assesses "the degree of case development that [C]lass [C]ounsel have accomplished prior to the settlement," in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.  The Court should measure this factor from the commencement of the proceedings in the class action.  *Id.*

Class Counsel represents that although further litigation of this case would require more discovery, the parties have completed sufficient discovery to understand the strengths and weaknesses of the case and appropriately negotiate and recommend a settlement.  (Pl.'s Mem of Law 19).  The Court agrees.  As stated, Class Counsel undertook extensive research and

preparation for this case, including conducting numerous discussions with the Class Representative and Opt-in Plaintiffs concerning the terms and conditions of employment. (*Id*.). Additionally, Class Counsel collected and reviewed payroll records to investigate the factual support for the legal claims. (*Id*.). All in all, the parties spent approximately ten months litigating and negotiating a resolution in this case before reaching a settlement.

The Court finds that the settlement reached here resulted from informed negotiations between experienced counsel who fully appreciated the merits and risks of this case. *See, e.g., Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 312 (E.D. Pa. 2012) (finding third factor weighed in favor of settlement, despite the early stage of the case, where there had been interview of employees, review of payroll, timekeeping and policy documents, and an informal inspection of the facility at issue). Accordingly, the Court finds that the third *Girsh* factor weighs in favor of settlement approval.

### 4.   Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors also weigh in favor of approving the settlement in this case. These two factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. In balancing these considerations, the Court "should not press into the merits of the case and instead rely to a certain extent on the estimation provided by Class Counsel, who is experienced with the intricacies of the underlying case." *Bredbenner*, 2011 WL 1344745, at * 13.

Plaintiff notes that there are several risks of non-recovery by class members in this action. Most problematically, the nature of Plaintiff's allegations requires proof of how many

hours class members worked in excess of forty each week.  (Pl.'s Mem. of Law 20).  This presents a significant factual hurdle under both federal and state law theories of liability.  With regard to the risk of establishing damages, Plaintiff notes the inherent difficulty in establishing damages in an "off-the-clock" case such as this where there has been no recording of the time at issue.  (*Id.*).  Although the burden of proving damages is lower where an employer did not keep accurate time records, as alleged in this case, Plaintiff would still be required to establish that he and other members of the class are entitled to some damages for uncompensated, "off-the-clock" work.  Finally, Plaintiff acknowledges the substantial risk that Defendant avoids liability all-together by successfully defeating class certification.  (Pl.'s Mem. of Law 20).  While Plaintiff believes he has stronger arguments on this issue, and that the class claims are meritorious, there is risk associated with litigating these issues that is incorporated into the settlement.

Because of the risks present in this case, which could result in no recovery by class members, that are eliminated by the certainty of an immediate cash payout pursuant this settlement, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of settlement.

### 5.   Risks of Maintaining the Class Action Through Trial

While the continued significance of this sixth *Girsh* factor in the settlement-only context is unclear, see *Prudential*, 148 F.3d at 321, the Court finds that this factor at least weighs moderately in favor of settlement.  The Court may, at any time before final judgment, decide to decertify or modify a class if the class proves to be unmanageable. Fed.R.Civ.P. 23(c)(1)(C). Defendant may well choose to challenge the certification of a litigation class if the case were to move forward.  The Court finds the likelihood of decertification low in this case, but any challenge would increase both the length and expense of the litigation.

### 6.      The Ability of Defendant to Withstand a Greater Judgment

The seventh *Girsh* factor examines whether Defendant "could withstand a judgment for an amount significantly greater than the Settlement."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001).  However, "[t]his factor does not require that the defendant pay the maximum it is able to pay."  *In re Diet Drugs Prods. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042, at *62 (E.D. Pa. Aug. 28, 2000) (citing *In re Prudential*, 148 F.3d at 321-22).  The Court finds this factor to be neutral in this case.  The parties have presented no evidence regarding Defendant's ability to pay a greater judgment, and even if Defendant has the ability to pay more, it does not mean it would be required to pay more.  *See Warfarin*, 391 F.3d at 538 (noting that "the fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached.").  Therefore, the Court finds that this factor does not weigh either in favor of or against settlement approval.

### 7.      The Range of Reasonableness of the Settlement in Light of the Best Recovery and All the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors are often considered together and "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case."  *Warfarin*, 391 F.3d at 538.  In weighing these two factors, courts must decide "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial."  *Prudential*, 148 F.3d at 322.  Courts should compare the amount of the proposed settlement with "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing" to make this determination.  *Id*. (internal quotations and citation omitted).

Under the terms of the settlement, class members will recover approximately $454,000 in unpaid wages, overtime, and other damages in the aggregate.  Based on initial calculations, Class Counsel estimates that each class member who worked for Defendant during the entire covered period could receive approximately $1250 of compensation from the Settlement Fund, after attorney's fees and other litigation expenses.  (Pl.'s Mem. of Law 21).  Plaintiff acknowledges that had the class succeeded in all claims, recovery may have been greater.  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).

Taking into account the uncertainty of proving that Business Sales Representatives did not receive overtime compensation for all work performed in excess of forty hours per week, the Settlement Amount represents a significant recovery of the overtime wages that could have reasonably been proven at trial.  (Pl.'s Mem. 22).  Had settlement not been reached, Plaintiff faced a substantial risk that Defendant would have attempted to enforce its arbitration policy against individual class members, which, if successful, would have prevented a substantial number of class members who stand to benefit from the settlement from participating in this or in any other lawsuit.  (*Id*).  In light of the significant risks associated with continued litigation, the Court finds the final two *Girsh* factors also weigh in favor of settlement.

In sum, the Court concludes that, after the consideration of these factors and the presumption of fairness to which the settlement is entitled, the class action settlement is fair, reasonable, and adequate.  The Court will order that the Settlement Agreement be finally approved.

17

### C.    Enhancement Payment to Named Plaintiff

Class Counsel seeks an enhancement payment of $2,500 to Plaintiff as Class Representative.  (Pl.'s Br. 23).  Such payments are designed to compensate a named plaintiff for the services provided during the course of litigation and settlement, the risks incurred, and to reward the public service performed by contributing to the enforcement of mandatory laws, and are fairly common in class action lawsuits involving a common fund for distribution fo the class. *See Bredbenner*, 2011 WL 1344745, at *22 (citing *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 1990)).  However, where the enhancement payment comes out of the common fund independent of attorney's fees, the Court must "carefully review" the request for fairness to other class members.  *See id.* (internal citation omitted).

Here, Class Counsel represents that Plaintiff has been actively involved with this litigation since before it was commenced, and that the information he provided to Class Counsel was the basis for the class action lawsuit.  (Pl.'s Br. 24).  Plaintiff assisted with the litigation by meeting with Class Counsel to discuss his experiences, explaining Defendant's payment and overtime policies, and answering counsel's questions.  (*Id.*).  Plaintiff also participated in two days of settlement negotiations.  (*Id.*).  None of the other class members engaged in similar activity.

It is clear that the class members here all benefitted from the assistance provided by the Named Plaintiff, and the enhancement payment sought to reward his effort is consistent with, if not lower than, awards granted in similar cases.  *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D.Pa. 2009) (between $5,000 and $10,000); *In re Elec. Carbon Prods Antitrust Litig.*, 447 F.Supp.2d 359, ($12,000)*; Varacallo v. Massachusetts*

*Mut. Life Ins. Co*, 226 F.R.D. 207,259 (D.N.J. 2007)($3,000 to $10,000 for active plaintiffs); *see also* 4 *Newberg on Class Actions* § 11.38, at 11–80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

Accordingly, the Court finds the requested enhancement payment here is reasonable and will award it to Plaintiff as requested.

### D.    Attorney's Fees and Expenses

Plaintiff's counsel seeks an award of $158,865 in attorneys' fees and $4,445.55 in costs. (Pl.'s Mot., ECF No. 51).  There have been no objections to the proposed amount of attorneys' fees and costs.

### 1.    Attorneys' Fees

Two methods may be used for calculating attorneys' fees in class or collective action lawsuits: the lodestar method and the percentage-of-recovery method.  *Gen. Motors*, 55 F.3d at 820–21.  In the Third Circuit, "[t]he percentage of recovery method is generally favored in cases involving a common fund" because it "allow[s] courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Prudential*, 148 F.3d at 333. Further, the percentage of recovery method is the prevailing methodology used by courts in the Third Circuit for wage and hour cases.  *Bredbenner*, 2011 WL 1344745, at * 19.  For these reasons, the Court will apply the percentage of recovery method here.

The Court must consider seven factors when evaluating the appropriateness of an attorneys' fee award under the percentage-of-recovery method:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of
> the class to the settlement terms and/or fees requested by counsel; (3)
> the skill and efficiency of the attorneys involved; (4) the complexity

and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  However, these factors need not be applied formulaically.  "Each case is different, and in certain cases, one factor may outweigh the rest."  *Id.*

In addition to the *Gunter* factors, the the Third Circuit has suggested that courts should also "cross-check the percentage award at which [it] arrive[s] against the 'lodestar' award method, which is normally employed in statutory fee-award cases."  *Id.*

### a.      Size of the Fund and the Number of Persons Benefitted

In the Third Circuit, courts have approved as reasonable attorneys' fees awards ranging from approximately 19% to 45% of the common fund.  *See Gen. Motors*, 55 F.3d at 822.  "As a general rule, the appropriate percentage to be awarded to [C]lass [C]ounsel decreases as the size of the fund increases."  *Bredbenner*, 2011 WL 1344745, at * 19 (internal quotation and citation omitted).

Here, Class Counsel's requested fee award represents approximately 35% of the common fund created by the Settlement Agreement.  (Pl.'s Mem. of Law in Supp. of Fees 1, ECF No. 51-1-1).  This at the high end of the range; however, it is consistent with fee awards approved in this Circuit and in the country for similar wage and hour cases.  *See id.* at *21 (approving an attorney fee award that was 33% of the common fund and listing relevant percentages of recoveries in wage and hour cases, all of which were at least 30%).  The Court finds that this factor weighs in favor of finding the attorneys' fees award reasonable here.

**b.      Substantial Objections By Class Members**

As discussed, there have been no objections to any aspect of the settlement here, including to the attorneys' fees award.  Such an absence favors awarding the requested fees without reduction.  *In re Rite Aid*, 396 F.3d at 305.  Accordingly, the Court finds that this factor weighs in favor of finding the attorneys' fees award reasonable.

**c.      The Skill and Efficiency of the Attorneys Involved**

The skills and efficiency of the attorneys involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."  *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *22 (E.D. Pa. Apr. 22, 2005) (internal quotation omitted).

As noted, Class Counsel in this matter has requisite employment law experience, including experiencing handling complex wage and hour class actions.  The Court has recognized that Class Counsel has represented the Plaintiff and the prospective class competently, diligently, and with professionalism throughout the course of this litigation.  Class Counsel represents that he devoted approximately 210 hours to this matter, which, in light of the various tasks involved in this litigation, including drafting of filings, communication with the parties and counsel, factual investigation, reflects that he worked in an efficient and cost-conscious manner.[4]

---

[4]  The time sheets reflect that counsel billed approximately 210 hours of time to this matter, and will spend additional time in monitoring the implementation of the Settlement Agreement going forward.  (Pl.'s Mem. of Law in Supp. of Mot. for Fees 18, 18 n.3).

For these reasons, this factor also weighs in favor of awarding the requested attorneys' fees.

### d.      The Complexity and Duration of the Litigation

The parties reached a tentative settlement agreement approximately ten months into this case.  The parties engaged in some limited motion practice following Defendant's Motion to Dismiss certain counts in the Amended Complaint; however, the case settled before the Court adjudicated this issue or before the parties began substantial discovery.  The Court has noted some of the complexities involved in proving Plaintiff's FLSA and state law claims.  However, it does not find that this case was unusually or especially complex when compared to other class and collective actions.  The Court thus finds that this factor weighs moderately favor of awarding the requested fees.

### e.      Hours Worked and the Risk of Non–Payment

As noted above, Class Counsel expended over 200 hours of his time litigating this case and working toward a favorable settlement.  Class Counsel took this case on a contingent fee basis and agreed to waive all costs if there was no class recovery.  (Pl.'s Mem. of Law in Supp. Of Mot. for Fees, 13).  While there has been no indication that Defendant would be unable to satisfy a judgment, as discussed, there was substantial risk that Plaintiff's claims would fail given Defendant's plausible defenses.  (*See id.*).  Therefore, there was a risk of non-payment under the contingency arrangement.  Counsel also advanced approximately $4,000 in expenses that would not have been reimbursed without a successful result.  Having assumed this risk and devoted significant time to this matter, the Court finds that this favor weighs in favor of awarding the requested fees.

**f.**      **Amount of Time Devoted by Counsel**

Class Counsel billed a total of 221.45 hours on this case since the inception of the litigation — 211.77 hours for counsel and 9.68 hours for his associate.  (Pl.'s Mem. of Law in Supp. of Mot. for Fees 18).  All cases are unique and this factor is difficult to consider in vacuum.  However, the Court notes that Class Counsel runs a small law firm, and was forced to abstain from other work to litigate this matter.  (*Id.* at 15).  Accordingly, the Court finds that the time devoted to this case was significant, and this factor weighs in favor of finding the award reasonable.

**g.**      **Awards in Similar Cases**

As previously discussed, most fee awards in common fund cases range from 19% to 45% of the settlement fund, with 25% being the median.  *See Lazy Oil v. Wotco Corp.*, 95 F. Supp. 2d 290, 341 (W.D. Pa. 1990).  Many class action settlements involve multi-million dollar funds, and the 25% benchmark is often appropriate in these cases in order to prevent a windfall to counsel.  *Id.* at 342 (noting that as the size of the fund increases, the size of the fee award should decrease to that the courts avoid fee awards so high that they bear little relationship to the effort expended by counsel).

However, fee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million, funds which are comparatively smaller than many common funds.  *Id.* at 342–43 (citing cases and noting a number of awards ranging from 30 to 36% in such cases).  For instance, in *Ratner v. Bennett*, the court determined that a fee award amounting to 35% of the settlement amount was reasonable in a class action settlement with a common fund of $400,000 and a class membership of 455 persons.  No.

92–4701, 1996 WL 243645, at *9 (E.D.Pa. May 8, 1996) (noting that because the common fund was relatively small, it was appropriate to give a higher percentage to Class Counsel as he "should not be penalized for undertaking and pursuing this litigation as vigorously as it would a much larger case which promises a more substantial fee award.").

*Ratner* is similar to the case in bar in a number of respects: the size of the fund, the number of class members, and the fee request are all comparable.  The Court finds that this factor also weighs in favor of awarding Class Counsel his requested fee amount.

### h.   Lodestar Cross–Check

The Third Circuit has suggested that, in addition to reviewing the *Gunter* factors, "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method ."  *In re Rite Aid*, 396 F.3d at 305 (citing *Prudential*, 148 F.3d at 333).  The lodestar is calculated by "multiplying the number of hours worked by the normal hourly rates of counsel; however, in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with "mathematical precision."  *In re Rite Aid*, 396 F.3d at 306-07, 307 n.16 (internal citation omitted). The court may then multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation."  *In re Ikon Office Solutions Inc. Securities Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000).

The lodestar in this case is $76,298.82, based on the actual billing rates of all attorneys who worked on this case.  (Pl.'s Mem. of Law in Supp. of Mot. for Fees 18).  A fee award of $158, 865 results in a lodestar multiplier of 2.08.  The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the

lodestar method is applied." *In re Prudential*, 148 F.3d at 341.  The lodestar cross-check therefore results in a multiplier well within the range frequently awarded in common fund cases in this Circuit.  As a result, the Court finds that the lodestar crosscheck confirms the reasonableness of the attorneys' fee award here.

### 2.      Costs

Class Counsel has requested an award of costs of approximately $4,445 to cover costs and expenses associated with this litigation, including the filing and service fees, photocopying services, and the costs of private mediation.  (Pl.'s Mot. Ex. 3, ECF No. 51-2).  There have been no objections to Class Counsel's request for costs.  In light of the documentation of these costs provided by counsel and the circumstances of this case, the Court finds the requested award of costs reasonable here.

## IV.      CONCLUSION

For the reasons set forth above, the Court certifies the Rule 23 state law class action and the FLSA collective action, approves the proposed settlement agreement in full, awards Class Counsel the attorney's fees and costs as requested, and awards an enhancement payment to Plaintiff.  An implementing order follows.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

25